UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MARY REBECCA CURTIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-463-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BREATHITT COUNTY FISCAL COURT, et al., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

The defendants have moved for summary judgment regarding all claims asserted by Plaintiff Mary Curtis. [Record No. 47] The defendants' motion will be granted because sovereign immunity protects Defendant Breathitt County Fiscal Court ("BCFC") from Curtis's state law claims and because Curtis has not presented sufficient proof to maintain federal constitutional claims against BCFC. And as explained more fully below, the defendants' motion will also be granted regarding all claims that Curtis has made against Defendant Mary Lois Stevens, the Breathitt County Court Clerk, and Defendant John Lester Smith, the Breathitt County Judge Executive.

**I.**

Many of the relevant facts are undisputed. Curtis is the current Breathitt County Clerk having taken office in November 2016. Before assuming this role, Curtis worked in the clerk's office for over 20 years. [Record No. 56, p. 4] In late July 2015, long-time Breathitt County Clerk Tony Watts informed the BCFC that he would be retiring for health reasons. [Record

Nos. 47-1, p. 5; 56, p. 4] At the time of this announcement, Curtis and three others were employed in the clerk's office. [Record Nos. 47-1, p. 5; 56, p. 4.] Curtis was serving as the chief deputy clerk under Watts. [Record Nos. 47-1, p. 5; 56, p. 4] Curtis was associated politically and affiliated with Clerk Watts. Additionally, she was his first cousin. [Record No. 56, p. 5] In his capacity as judge executive, Smith had the sole responsibility to appoint the next county clerk. [Record Nos. 47-1, p. 5; 56, p. 7] Watts asked Smith to appoint Curtis to the position; however, Smith instead appointed Harold Hutchinson in August 2015. [Record Nos. 47-1, p. 5; 56, p. 10]

After taking office, Hutchinson changed Curtis's title from chief deputy clerk to deputy clerk and did not employ a chief deputy. [Record No. 56, p. 14] On August 4, 2015, pursuant to Ordinance No. 07212015, the BCFC instituted fee polling with the clerk's office and transferred all of the employees of that office into the county's payroll system. This action made them subject to the Breathitt County Administrative Code. [Record No. 44-1] As a result, all net income and fees from the clerk's office would be paid monthly to the county treasurer instead of excess fees being paid at the end of the year. *Id.* The four clerk's office employees (Curtis, Martinez, Combs, and Fletcher) were appointed to the position of deputy clerk and their pay rates were set for payroll purposes. [Record No. 44-3, 44-4]

Curtis filed for the Breathitt County Clerk's position on Friday, November 6, 2015. [Record No. 56, p. 18] Hutchinson announced that he would be resigning, effective November 13, 2015. [Record Nos. 47-1, p. 5; 56, p. 18] Curtis alleges that Hutchinson told her that he could not do to her what Smith wanted. [Record Nos. 47-1, p. 5; 56, p. 16] But Hutchinson denies he ever said anything of the sort. [Record No. 44, p. 76] Smith again had the sole

responsibility to appoint the next county clerk and decided to appoint Defendant Stevens rather than Curtis. [Record Nos. 47-1, p. 5; 56, p. 19]

On November 13, 2015, newly-appointed county clerk Stevens came into the office and handed Martinez, Combs, and Fletcher an envelope containing a paper offering them a position of deputy clerk. [Record Nos. 47-1, p. 6; 56, p. 19] Curtis did not receive an envelope and asked if she would be receiving one. Stevens responded in the negative, indicating that Curtis no longer had a job and that her services were no longer needed. [Record Nos. 47-1, p. 6; 56, p. 20] Curtis alleges that her termination was due to her political affiliation with former Clerk Watts. However, Stevens alleges the termination was due to budgetary reasons and because Curtis was receiving a significantly higher hourly rate than the other deputies. [Record No. 26, p. 28, lines 20-23; p. 30, lines 10-16]

Curtis asserts three state law claims, two based on 42 U.S.C. § 1983, and one based on 42 U.S.C. § 1985. [Record No. 1] She claims in Count I that she is entitled to damages for political discrimination arising from the defendants' alleged violation of Ky. Rev. Stat. § 67.710(7). *Id.* at 8–9. Curtis requests monetary as well as declaratory and injunctive relief in Count II for the defendants' alleged violation of sections 2 and 3 of the Kentucky Constitution. *Id.* at 9-10. Specifically, she seeks "full back pay and benefits, and to have her termination declared null and void." *Id.* at 10. Curtis also requests punitive damages and attorney fees under Count III for "State Law Wrongful Discharge." *Id.* at 10.

Curtis has also asserted federal constitutional claims under 42 U.S.C. § 1983. Curtis claims in Count IV that the defendants violated her Fourteenth Amendment procedural due process rights by failing to give proper notice and a hearing. *Id.* at 11. In Count V, Curtis seeks damages for the defendants' alleged violation of her First Amendment rights to freedom

of speech and freedom of association. *Id.* at 11. Finally, Curtis has asserted a federal constitutional claim based on 42 U.S.C. § 1985. *Id*. at 12. In Count VI, she alleges that Smith and Stevens conspired and retaliated against her for her political associations, affiliations, and political expressions of speech and opinion by terminating her.

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

A party moving for summary judgment bears the burden of demonstrating conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met his burden of production, the nonmoving party must come forward with significant probative evidence to defeat a properly supported motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

### A.     Federal Claims

State governments are not subject to liability under § 1983. *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 376 (1990). However, the Supreme Court has construed "person" in § 1983 to include municipal corporations and other similar governmental entities. *Id.* Accordingly, BCFC and its employees are potentially liable under the statute. Nevertheless, liability is limited. Qualified immunity is still available under certain circumstances for government employees sued in their individual capacities. *See Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 339 (6th Cir. 1990). And governmental entities are not subject to vicarious liability under § 1983 for the actions of their employees. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).

#### 1.     Qualified Immunity for Stevens and Smith

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defense is raised, the burden is on the plaintiff to prove that the official is not entitled to immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). Thus, viewing all the facts in a light most favorable to Curtis, the Court must determine whether she has alleged sufficient facts showing that Stevens and Smith violated her clearly-established constitutional rights. *See id*. Stevens and Smith are entitled to qualified immunity regarding the claims asserted in Count IV and Count V because Curtis has not shown that she was entitled to any procedural due

process under the Fourteenth Amendment and has not shown that her First Amendment rights have been violated.

### a) Fourteenth Amendment Claim

Curtis alleges that "she was not given an opportunity for a due process hearing prior to the termination of her employment, nor was [she] given any reason for the termination of her employment." [Record No. 1-1, ¶ 86] She contends that the defendants' violated her Fourteenth Amendment right to procedural due process based on this alleged deprivation of notice and a hearing. *Id.* "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569 (1972). A government position, by itself, does not constitute a protected property interest. *Bailey v. Floyd Cnty. Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir.1997). "Government employment amounts to a protected property interest if the employee is 'entitled' to continued employment." *Id.* (citing *Roth,* 408 U.S. at 577). Whether a property interests exists depends primarily on state law. *Id.* Therefore, a government employee asserting a protected property interest in his position must "point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Id.*

An at-will employee, or an employee who may be terminated without cause, does not have a protected property interest. *Id.* In Kentucky, an employee is at-will "unless the parties specifically manifest their intention to condition termination only according to express terms. . . ." *Id.* (citing *Shah v. Am. Synthetic Rubber Corp.,* 655 S.W.2d 489, 491 (Ky.1983)). Curtis appears to rely primarily on Breathitt County Fiscal Court's Administrative Code to support her contention that a deputy clerk job amounts to a protected property interest. [Record No.

1-1, ¶ 86] In Kentucky, an employer's policies and procedures may establish whether he has an at-will or for-cause relationship with his employer. *Bailey,* 106 F.3d at 141 (citing *Shah,* 655 S.W.2d at 492). However, Curtis fails to respond to defendants' arguments raised in their motion for summary judgment and does not point to any provision of the administrative code to support the argument that she is entitled to an ongoing right to employment.[1]

Contrary to the assertions contained in Curtis's Complaint, the county's administrative Code does not establish that her status as a full-time employee entitled her to continued employment. In fact, it establishes just the opposite. According to the administrative code, full-time employees are at-will employees. The administrative code's express disclaimers defeat the plaintiff's claim that she possessed a protected property interest in her continued employment with the clerk's office. *See Shelton v. Brown,* 71 F.Supp.2d 708, 712–713 (W.D.Ky.1998) (Where a city's policies and procedures manual contained an express disclaimer that the manual was "not intended to represent a contract between any employee and the city," the plaintiff's employment was at-will even though the manual also provided for a pre-disciplinary hearing.); *Myers v. Dean,* No. 2:04 CV 00654, 2006 WL 689086, at *5 (S.D. Ohio Mar. 16, 2006) (The plaintiff did not have a protected property interest where the employee handbook contained "an express disclaimer that it is 'not an employment contract, express or implied,' " and repeatedly stated that it was not intended to limit the employer's right to terminate his employee.).

---

[1] "It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Cunningham v. Tennessee Cancer Specialists, PLLC*, 957 F.Supp.2d 899, 921 (*quoting Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)).

### b) First Amendment Claim

Curtis also claims that Stevens and Smith violated her First Amendment rights by terminating her based on her "political affiliation and political support of the prior county clerk." [Record No. 56, p. 37] The defendants first appear to argue that the firing was justified due to Curtis having declared to be a candidate in the upcoming county clerk election. [Record No. 47-1, pp. 17-19] However, as the plaintiff has correctly noted, this case does not deal with termination due to Curtis's political candidacy. [Record No. 56, p. 36] No testimony has been presented indicating that Stevens terminated Curtis for that reason. Further, Curtis is not arguing that was the case. Instead, she contends that she was terminated due to her political affiliation with the prior county clerk.

"[T]he First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless political affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party,* 497 U.S. 62, 64 (1990) (citing *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980)). The defendants dedicate several pages to the argument that the position of chief deputy is inherently confidential and, therefore, subject to patronage dismissal. [Record No. 47-1, pp. 19-22] And while the defendants may be correct in this assertion, *see Summe v. Kenton County Clerk's Office*, 604 F.3d 257, 266-69 (6th Cir. 2010) (finding that the position of Chief Deputy County Clerk in Kenton county, Kentucky falls within the second and third *McCloud* categories and is, thus, lawfully subject to patronage dismissal), the plaintiff argues and provides evidentiary support that she was not the chief deputy at the time of her dismissal. Instead, she was only a deputy clerk.

Taking the facts in a light most favorable to Curtis and drawing all reasonable inferences in her favor, the Court must regard her as a deputy clerk, not chief deputy. Defendants do not claim that the position of deputy clerk would fall within any of the *McCloud* categories, an argument which would arguably fail. *See Caudill v. Hollan*, 431 F.3d 900, 908-11 (6th Cir. 2005) (holding that patronage dismissals of Kentucky deputy county clerks with routine duties violates the U.S. Constitution). However, to overcome the present motion, Curtis "must point to specific, nonconclusory allegations linking [her] speech to employer discipline" to maintain her First Amendment claim. *Bailey,* 106 F.3d at 144 (internal quotation marks omitted). Proof that "an adverse employment action followed speech that the employer would have liked to prevent" is not sufficient to defeat a motion for summary judgment. *Id.* at 144–145. Rather, Curtis "must present evidence sufficient to create a genuine issue that [her] speech *caused* [her] discharge." *Id.* at 145. Viewing the evidence in a light most favorable to the plaintiff, Curtis has failed to show such that a reasonable jury could conclude that her First Amendment rights were violated by Stevens' decision to terminate her employment. While the Court accepts the plaintiff's factual allegations as true, *see Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992), Curtis has failed to show anything more than her affiliation with the former county clerk and Stevens' termination decision on the first day of her appointment as the new county clerk.

Stevens maintains that she terminated Curtis for budgetary reasons and Curtis has not offered evidence to rebut that contention. Stevens indicated in her deposition that the reason for terminating Curtis was due to the fact that Curtis made significantly more per hour that the other deputy clerks. Stevens stated that "if she brought my own [deputy], I had to get rid of one . . . so I picked the highest paid one." [Record No. 26, p. 28, lines 20-23] After Stevens

terminated Curtis, she brought in Courtney Hudson as her chief deputy at a lesser rate and raised all of the other deputies to the same amount. She stated that she equalized the deputy clerk's pay because "it wasn't fair to pay somebody - - I'm hiring new employees, not a 20 year veteran, a 10 year veteran, trained deputies. I don't see one trained deputy being worth $12 more an hour than another trained deputy." *Id*. at p. 30, lines 10-16. And while the plaintiff contends that Stevens allegedly acknowledged it would have been cheaper to have kept Curtis and brought in Courtney Hudson as her chief deputy, rather than giving everyone raises and hiring additional staff throughout the year, the argument fails to take into account Stevens previously identified reason for terminating Curtis: letting go of the person who made the most and then equalizing the pay of the other deputies.

Further, the plaintiff contends that when Stevens came into the office and she was terminated, Stevens allegedly indicated that Curtis was the chief deputy and she did not need her because Stevens would be bringing in her own chief deputy. [Record No. 56, p. 21] This argument does little to bolster the plaintiff's argument that the termination was due solely to political affiliation. In fact, it does quite the opposite, and shows that Stevens allegedly thought that Curtis was the chief deputy and did not need her any longer because Stevens was bringing in her own person for that position. Curtis states that "[c]learly, Mary Lois Stevens, when appointed, saw the opportunity to rid herself of the person most closely associated with her former political rival and did so even knowing that she was not the chief deputy." *Id*. at p. 36. In reality, the record does not clearly support this contention and Curtis does not "point to specific, nonconclusory allegations linking [her] speech to employer discipline."

Regarding Smith, Curtis was not subject to removal with approval by Smith and the fiscal court. While the fiscal court determines the maximum amount a county clerk may

expend for deputies and assistants, the county clerk determines the number of deputies and assistants to be hired and the compensation of each such employee. *See Cook v. Popplewell*, 394 S.W.3d 323, 338 (Ky. 2011). The actual hiring or firing of the deputies resides with the county clerk. OAG 84-383. Nor did Smith terminate Curtis' employment. Stephens terminated Curtis's employment upon her taking office as the new county clerk. Curtis fails to address this distinction and even notes in her response that "Mary Lois Stevens when appointed, saw the opportunity to rid herself of the person most closely associated with her former political rival and did so even knowing that she was not the chief deputy." [Record No. 56, p. 36] Judge Smith did not terminate Curtis from her employment as a deputy clerk in the county clerk's office.

### 2. Official Capacity Claims Asserted Against Stevens and Smith

The defendants also argues that they are entitled to summary judgment on the plaintiff's constitutional claims asserted against them in their official capacity. [Record No. 47–1, p. 26] "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Pusey v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir.1993). *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Accordingly, the plaintiff's claims against Steven, Smith, and BCFC are redundant. Because a suit against Stevens and Smith in their official capacity is truly a suit against BCFC, the plaintiff's constitutional claims against Stevens and Smith in their official capacity will be dismissed as duplicative. *See C.K. v. Bell Cnty. Bd. of Educ.,* 839 F.Supp.2d 881, 884 (E.D.Ky. 2012) ("A plaintiff may sue a local government directly for damages . . . so there is no longer

a need to bring official-capacity actions against local government officials." (internal quotation marks and citation omitted)).

### 3. Fiscal Court Liability

BCFC claims that summary judgment is warranted with respect to the plaintiff's constitutional claims because respondeat superior is not a proper basis for § 1983 liability. [Record No. 47–1, pp. 27–28] BCFC is correct that "a municipality cannot be made liable under 42 U.S.C. § 1983 on a *respondeat superior* basis." *Graham,* 473 U.S. at 168. However, it may be held liable under § 1983 based on "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers." *Adkins v. Bd. of Educ.,* 982 F.2d 952, 957 (6th Cir.1993) (quoting *Monell,* 436 U.S. at 690). Relying on the Supreme Court's plurality decisions in *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), and *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988), the Sixth Circuit has held that a single act of a local official may establish that his employer adopted an unconstitutional policy if the official has "final policymaking authority." *Adkins,* 982 F.2d at 957–58. "[W]hether an official has such final authority is a question of state law." *Id.* at 957 (citing *Pembaur,* 475 U.S. at 483).

While the Court has found that Curtis cannot demonstrate an underlying violation of her constitutional rights, she has also failed to offer any evidence that Stevens, acting as county clerk when she terminated Curtis's employment, was acting as a county policymaker. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 482. "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id*. at 482-83. Curtis has not shown that the county clerk had the authority to

establish county hiring policy. Further, the Complaint indicates that the source of employment policies in the county was the Administrative Code, not the county clerk. *See Cook v. Popplewell*, 394 S.W.3d 323, 338-39).

### 4. Conspiracy and Retaliation Claim

"A § 1985(3) cause of action for conspiracy requires that the plaintiff prove: (1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; and (4) injury or deprivation of a federally protected right." *Royal Oak Entertainment, LLC v. City of Royal Oak, Michigan*, 205 Fed. Appx. 389, 399 (6th Cir. 2006). The Sixth Circuit has held that a 1985(3) applies only where the alleged discrimination was based on race or membership in another class comprising "discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Volunteer Med. Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir.1991) (internal quotation marks and citations omitted). Curtis argues that the Smith and Stevens conspired and retaliated against her for her political associations, affiliations, and political expressions of speech and opinion by terminating her in violation of 42 U.S.C. § 1985. However, she fails to provide any evidence regarding this claim. Thus, the defendants are entitled to summary judgment on this cause of action.

### B. State Law Claims[2]

Smith, Stevens, and BCFC claim that they are entitled to immunity for all state law claims asserted against them. [Record No. 47-1, pp. 28-31] BCFC is entitled to sovereign

---

[2] Once again, Curtis fails to address several of the defendants' arguments including that: (i) that they are entitled to sovereign immunity and qualified immunity on all of her state law

immunity on all of the plaintiff's state law claims, and Smith and Stevens are protected by the same immunity for the claims made against them in their official capacity. Additionally, the defendants argue that Stevens is protected by qualified immunity and the claims asserted against her fail factually and as a matter of law. *Id.* at 30-33.

### 1.    Sovereign Immunity for BCFC

"When assessing whether defendants are entitled to immunity from state law tort liability, the court must apply Kentucky rules of sovereign immunity." *Ivey v. McCreary Cnty. Fiscal Court*, 939 F. Supp. 2d 762, 765 (E.D. Ky. 2013). Under Kentucky law, county governments are protected by sovereign immunity. *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003). And absent a legislative waiver, county governments cannot be held vicariously liable for the ministerial acts of their employees. *Id.* Curtis does not argue that Kentucky's General Assembly has waived BCFC's sovereign immunity. Because BCFC is cloaked with this protection for Curtis's state law tort claims, its motion for summary judgment will be granted regarding those claims.

### 2.    Official Capacity Claims Asserted Against Smith and Stevens

In Kentucky, "[t]he absolute immunity from suit afforded to the state also extends to public officials in their representative (official) capacities, when the state is the real party against which relief in such a case is sought." *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky. 2001). Thus, Smith and Stevens are protected by the same sovereign immunity that protects

---

claims; (ii) the alleged violation of the Kentucky constitution fails as a matter of fact and law; and (iii) the alleged violation of wrongful discharge under Kentucky law fails factually and as a matter of law. *See Cunningham*, 957 F.Supp.2d at 921.

BCFC, and summary judgment will be granted regarding the state law claims made against them in their official capacities.

### 3. Qualified Immunity

Kentucky's qualified immunity doctrine protects individual officers from liability for their negligent performance of: (i) discretionary acts or functions, (ii) made in good faith, (iii) within the scope of their authority. *Yanero*, 65 S.W.3d at 522. An act is discretionary if it requires the exercise of judgment or personal deliberation. *Id*. Conversely, qualified immunity in not available "for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id*.

Stevens's decision to fire Curtis was a discretionary act, meeting the first requirement of Kentucky's qualified immunity test. Stevens's duties as County Clerk did not require her to dismiss Curtis, and the plaintiff does not contend that Stevens was actually performing a ministerial function when she fired Curtis. Furthermore, Stevens was within her scope of authority when dismissing Curtis, a deputy clerk in the county clerk's office. *See Cook v. Popplewell*, 394 S.W.3d 323, 338 (Ky. 2011) (stating that KRS § 64.530(3) is the source of the discretion a county clerk has when discharging a deputy clerk). Therefore, Stevens is entitled to qualified immunity on all of Curtis's state law claims.

### 4. Individual Claims Asserted Against Smith

#### a) Political Discrimination

Curtis claims that she is entitled to compensatory damages as well as attorney fees for political discrimination by alleging Smith violated KRS § 67.710(7). KRS § 67.710(7) grants

the county judge executive the power "to exercise with approval of the fiscal court the authority to appoint, supervise, suspend, and remove county personnel." However, Curtis was not subject to removal with approval by Smith and the fiscal court. As noted earlier in this opinion, the fiscal court determines the maximum amount a county clerk may expend for deputies and assistants, but the county clerk determines the number of deputies and assistants to be hired and the compensation of each. *See Cook*, 394 S.W.3d at 338. The actual hiring or firing of the deputies resides with the county clerk. OAG 84-383. And again, the Court notes that Smith did not terminate Curtis's employment. Upon taking office as the new county clerk, Stephens terminated Curtis. [Record No. 56, p. 36]

Because Smith did not terminate Curtis from her employment there is no violation of KRS 67.710(7). Furthermore, the statute only lists the powers and responsibilities of a county judge executive. It does not explicitly authorize suits for political discrimination against judge executives who violate its individual provisions. In other words, it is not self-executing and cannot provide the relief sought. *See Jones v. Perry Cty. Fiscal Court*, 185 F.Supp.3d 947, 963 (E.D. Ky. 2016).

### b) Alleged Violation of the Kentucky Constitution

Curtis's alleges violations of Section 2 and 3 of the Kentucky Constitution in Count II of the Complaint. However, Kentucky does not recognize a private cause of action akin to *Bivens* to recovery money damages for a violation of the Kentucky Constitution. *See Conn v. Deskins*, 238 F.Supp.3d 924, 929 (E.D. Ky. 2017) (citing several cases for support). Curtis has failed to address how her termination from the clerk's office violated her right to due process or equal protection under the Kentucky Constitution. In fact, she does not even mention Section 2 or Section 3 in her response to the motion for summary judgment. Curtis

has not provided any legal support for a private cause of action for violation of the Kentucky Constitution, nor has she shown that she was treated unequally or without due process by Smith. Thus, the Smith is entitled to summary judgment regarding Count II.

### c) Wrongful discharge Claim

Kentucky recognizes that an employer may terminate an "at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible (cases cited)." *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984). In *Firestone*, the Supreme Court of Kentucky outlined the limitations to the wrongful discharge exception, stating that "[e]mployers as a group have a legitimate interest to protect" which requires that "the cause of action for wrongful discharge [be] clearly defined and suitably controlled." *Id*. at 733. In *Grzyb v. Evans*, that court reiterated the limitations to the exception, finding that for it to apply, "(i) the discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law; (ii) that policy must be evidenced by a constitutional or statutory provision; and (iii) the decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." 700 S.W.2d 399, 401 (Ky. 1985). The *Grazyb* court also identified two situations in which discharging an at-will employee would be so contrary to public policy as to be actionable, despite the absence of "explicit legislative statements prohibiting the discharge." *Id*. at 402. Those situation include: (i) where the alleged reason for the discharge of the employee was the employee's failure or refusal to violate a law in the course of employment; or (ii) when the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment. *Id*.

Curtis only alleges in her Complaint that "there is a well-defined public policy in the Commonwealth of Kentucky that county employees should be free to exercise political support, affiliation and association of the candidate and party of their choice, run for political office, as well as make comments on matter of public concern, without fear of reprisal by their employers." [Record No. 1-1, ¶ 81] As was the case in *Grzyb*, Curtis has not made even a passing reference to any specific constitutional or statutory provisions upon which she might base a claim. Further, her response to the defendants motion for summary judgment does not even mention her wrongful termination claim or address the arguments raised by the defendants. Curtis has not identified a "well-established legislative enactment" creating a right that Curtis was fired for exercising. Curtis has not provided the Court with a sufficient legal basis to defeat the defendants' motion for summary judgment. Thus, Smith is entitled to summary judgment regarding Count III.

### IV.

For the reasons outlined above, it is hereby **ORDERED** as follows:

1. The defendants' motion for summary judgment [Record No. 47] is **GRANTED**.

2. Plaintiff Mary Rebecca Curtis's claims asserted against all defendants are **DISMISSED**, with prejudice.

3. This action is **DISMISSED** and **STRICKEN** for the Court's docket

This 22nd day of January, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge